UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LOUIS G. KELLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-005-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Louis G. Kelley brings two points of error in this appeal of the Commissioner's decision to deny his application for disability insurance benefits.[1] The undersigned has considered the administrative record, the arguments of the parties, and the applicable law and now recommends that the district court affirm the Commissioner's decision.

## I.   Statement of the Case

Kelley previously worked as a saw changer, machine operator, warehouse worker, and furniture mover. (Tr. 33–34, 47.) On January 3, 2007, he underwent cardiac catheterization and placement of stents after he was diagnosed with acute coronary syndrome. (Tr. 19, 241.) He continued to work thereafter, but his employment was terminated in February 2009. (Tr. 34.) He subsequently filed his application for disability insurance benefits and claimed that he became

---

[1] On February 14, 2013, prior to the date on which Kelley filed his application for disability insurance benefits, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin was automatically substituted as Defendant in this case. Although the Acting Commissioner is the Defendant in this action, because Michael J. Astrue was the Commissioner of the Social Security Administration at the time Kelley's applications were denied, the term "Commissioner" rather than "Acting Commissioner" is used in this Report and Recommendation.

disabled the month his employment ended.  (Tr. 103.)  At a hearing before an administrative law judge (ALJ) Kelley testified that he looked for another job for one year afterward but was unsuccessful.  (Tr. 37.)  He testified that depression keeps him from working, and he also claimed that he experiences chest pain when he feels stressed, exerts himself, stands for long periods of time, or performs heavy lifting.  (Tr. 35, 41, 43.)  When asked to explain what type of exertion causes his chest pains, he testified that he was unable to lift his mother when she fell because of the exertion it required.  (Tr. 41.)  Kelley also testified that he was limited in his ability to work because of problems with his hands and feet. (Tr. 44, 46.)

The ALJ reviewed Kelley's claim under the five-step sequential evaluation used to analyze applications for Social Security benefits and found at the fifth step that Kelley was not disabled.  In reaching his decision, the ALJ determined that Kelley suffered from severe impairments, including hypertension, coronary artery disease with hyperlipidemia, and depression but that he did not have an impairment or combination of impairments that match or are equal to any of the listed impairments in the Commissioner's regulations.  (Tr. 18–19.)  The ALJ determined that, despite his impairments, Kelley had the residual functional capacity (RFC) to perform light work with limitations.  (Tr. 24.)  Based on testimony from a vocational expert, he determined that Kelley could perform the jobs of photograph finisher, shipping and receiving weigher, and mail room clerk. (Tr. 25.)

## II.   Kelley's First Point of Error

Kelley argues that the ALJ failed to comply with Ruling 96-8p when he assessed his RFC. An ALJ assesses a claimant's RFC to determine the most the claimant can do despite his impairments.  20 C.F.R. § 404.1545(a)(1) (2013).  Ruling 96-8p provides guidance regarding this

determination.  SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996).  As Kelley points out, the ruling

directs that the ALJ must undertake a function-by-function assessment and must include

determinations as to the claimant's capacity to perform each of the functions required at a particular

exertional level. *Id*. at *3.  The function-by-function assessment is required in order to determine

"whether the individual is capable of doing the full range of work contemplated at the exertional

level."  *Id*. at *3.  This was done in Kelley's case: the ALJ determined, after considering the

functions required in light exertional work, that Kelley could not perform the full range of light

work.  (Tr. 24; *see also* Tr. 25 "the claimant's exertional and nonexertional limitations do not allow

the performance of a full range of light work . . .".)

The full range of light work involves lifting no more than twenty pounds at a time, frequently

lifting or carrying objects weighing up to ten pounds, and either (1) a "good deal of walking" or

standing or (2) sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).  The ALJ specifically limited Kelley to light work that is non-complex and

allows the worker to alternate between sitting and standing at his option, does not involve climbing,

and involves only superficial contact with co-workers and supervisors and no contact with the

general public.  (Tr. 24.)

Kelley argues that the ALJ should have considered whether, given his heart condition, he is

capable of pushing and pulling arm and leg controls.  Kelley's argument does not require remand.

According to the regulations, it is only light work that involves sitting most of the workday that may

require a worker to use arm or leg controls.  20 C.F.R. § 404.1567(b) ("a job is in this category when

it requires a good deal of walking or standing, or when it involves sitting most of the time with some

pushing and pulling of arm or leg controls.")  The ALJ limited Kelley to work that will allow him

to alternate between sitting and standing; therefore, none of the jobs will require sitting most of the day or pushing and pulling arm and leg controls.

Kelley also contends that he suffers from chest pain and shortness of breath.  He contests the ALJ's inclusion of a limitation to jobs that will allow an individual to alternate between sitting and standing at his option.  He argues that the limitation is generally provided for claimants who suffer from postural limitations and is of no use to an individual who suffers shortness of breath and chest pain with exertion.  He further argues that even occasionally lifting and carrying twenty pounds would place him at risk of experiencing shortness of breath and chest pain.  In support of his arguments, Kelley points to examination notes from a consulting physician who, Kelley claims, reported "'some exertional shortness of breath.'"  (Pl.'s Br. 19 (citing Tr. 203).)

Kelley's arguments must be rejected.  First, the examination note Kelley cites relates to his report of subjective symptoms during an examination, and it is the only notation of shortness of breath in any examination record generated after Kelley recovered from the cardiac catheterization he underwent in 2007.  (Tr. 203.)  In fact, numerous physicians reported that Kelley did not experience chest pain and/or shortness of breath.  (Tr. 175 (denied chest pain and shortness of breath); Tr. 185 (denied chest pain); Tr. 203–04 (denied chest pain and shortness of breath); Tr. 239 (denied chest pain and shortness of breath); Tr. 253 (no chest discomfort); Tr. 264 (denied chest pain); Tr. 293 (no shortness of breath and no chest pain during performance of daily activities).  As noted above, Kelley testified that he experienced shortness of breath when he stood too long, and the ALJ accommodated this symptom by limiting Kelley to work that will allow him to alternate between sitting and standing at his option. (Tr. 24, 41.)  Further, although Kelley testified that he experienced shortness of breath with exertion, he indicated that it was only extreme exertion, such

4

as the exertion involved in attempting to lift his mother from the floor, that caused him problems. (Tr. 41.)  The ALJ limited Kelley to work that involves lifting 20 pounds or less.  (Tr. 24.)

Despite Kelley's arguments to the contrary, the ALJ's RFC determination is supported by substantial evidence.  Kelley noted on application documents that he was capable of lifting 20 pounds, prepared simple meals, socialized, attended church, and played pool.  (Tr. 140, 142–43.) In addition, he told an examining physician that he traveled by bus and was "in charge of cooking and cleaning" for his household.  (Tr. 198.)  Significantly, he testified that he looked for a new job for one year after his employment ended in 2009 and during 2011.  (Tr. 36–37.)  Kelley therefore thought he was capable of working during the time that he claimed he was disabled.  A claimant's ability to work despite impairments supports a finding of no disability.  *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).  Further, coupled with the medical evidence, Kelley's statements regarding his activities constitutes substantial evidence to support the ALJ's decision.  *See id*. (citing evidence in the claimant's disability report that supported the ALJ's finding of no disability).

III.    **Kelley's Second Point of Error**

Kelley claims that the exertional level for his RFC falls between the light and sedentary exertional levels and that Social Security Ruling 83-12 should have been applied in his case.  Ruling 83-12 directs the ALJ to consult a vocational expert in a case in which the claimant's RFC is "in the 'middle' in terms of regulatory criteria for exertional ranges of work."  SSR 83-12, 1983 WL 31253, at *3 (1983).  That is what was done in this case.  At the hearing the ALJ asked a vocational expert whether there were any jobs an individual with Kelley's demographic characteristics and RFC could perform.  (Tr. 47.)  In response, the vocational expert testified that such an individual could work as a photograph finisher, shipping and receiving weigher, and a mail room clerk.  *Id*.

"[A] vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan*, 58 F.3d at 132.  A plaintiff who disputes a finding that he is capable of performing jobs a vocational expert has identified must bring evidence contrary to the vocational expert's testimony.  *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005).

Kelley attempts to do so by arguing that the ALJ failed to address limitations related to balancing, stooping, kneeling, crouching, crawling, reaching, handling, and fingering.  This argument is without merit.  The evidence does not support such limitations.  Kelley testified that he experienced problems with his hands and that his left hand, which is his non-dominant hand, presented more problems.  (Tr. 44, 204.)  According to the medical evidence, Kelley suffered a stab wound to his left upper extremity sometime prior to the cardiac event in 2007.  (Tr. 204.)  However, during examination he exhibited normal grip strength in both hands and normal range of motion in both his wrists and shoulders.  *Id*.  Although Kelley testified that he could only lift up to 10 pounds, he claimed on application documents that he could lift 20 pounds.  (Tr. 42, 143.)  In addition, as noted above, Kelley played pool during the time that he claimed he was disabled, and he also reported performing medium to heavy lifting in the job that was terminated in 2009.  (Tr. 142, 283.)  Such activity does not support Kelley's claim that he was limited in his ability to use his upper extremities. The ALJ need not give weight to a claimant's subjective complaints when they conflict with medical and other evidence in the record.  *See, e.g.*, *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985).  It is within the ALJ's discretion to discredit the claimant's subjective complaints of pain based on the claimant's testimony of his daily activities in combination with the medical records. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). The ALJ did not err in not incorporating limitations into the RFC that would address Kelley's claims regarding his upper extremities.  The district court should reject Kelley's claims to the contrary.

6

The district court should likewise reject Kelley's claims regarding limitations related to his feet. Kelley points to his testimony concerning a callus he has on the bottom of one of his feet and a notation from a consulting physician that he suffers from mild plantar fascitis. (Tr. 46, 205.) Kelley testified that he suffers pain when he stands on his feet for long periods and now argues that he is unable to stand for 1/2 to 2/3 of the day as required in jobs classified in the light work category. This argument must also be rejected. As previously discussed, the ALJ limited Kelley to work that will allow him to sit at his option. (Tr. 24.) Any pain Kelley might experience from prolonged standing can be relieved by sitting at his option during the workday. *Id.*

**IV.    Conclusion**

Judicial review of the Commissioner's denial of Social Security benefits is limited to two issues: (1) whether the Commissioner's final decision is supported by substantial evidence and (2) whether the Commissioner used proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citations omitted). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the ALJ's decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). In this case, substantial evidence supports the ALJ's decision. It is therefore recommended that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Kelley's Complaint.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:          September 20, 2013.

NANCY M. KOENIG
United States Magistrate Judge

8